IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:18 CV 298 WCM

| | | |
|---|---|---|
| ALTON T. CRAIG, | ) | |
| | ) | |
| Plaintiff, | ) | MEMORANDUM |
| | ) | AND |
| v. | ) | ORDER |
| | ) | |
| ANDREW SAUL, | ) | |
| Acting Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the Court on the parties' cross motions for summary judgment. Docs. 10 & 14.[1]

## I. Background

This case involves attempts by the Social Security Administration (the "Administration") to recover certain disability insurance overpayments from Plaintiff. The information of record, including testimony given by Plaintiff during a hearing on February 17, 2017 before an administrative law judge ("ALJ"), provides the following background.

---

[1] The parties have consented to the disposition of this matter by a United States Magistrate Judge. Docs. 7 & 8.

## A. Initial Overpayment Information and Tax Refund Offsets

In 1989, Plaintiff broke his leg in a motorcycle accident and subsequently received disability insurance benefits. Transcript of administrative record ("AR"), pp. 246-247; 123.

Plaintiff was able to return to work eventually. The record does not reveal the specific date Plaintiff began working again but he posted wages of $14,846.88 in 1991, $19,067.76 in 1992, $26,673.27 in 1993, and $26,917.25 in 1994. AR pp. 14 & 112.

Plaintiff testified that at some point he received correspondence from the Administration stating that he had been overpaid disability insurance benefits. He stated that he was told initially that the amount of the alleged overpayment was $17,000 but was later advised that he owed $3,000.00 or $9,000.00. AR p. 250. Copies of this correspondence are not included in the administrative record.

Plaintiff did not send any written correspondence or make any filings in response to the initial overpayment notifications but instead "talked to the man from Alabama to straighten this out." Plaintiff testified that the man in Alabama told Plaintiff "he would take care of it." AR pp. 250-251. Plaintiff stated that based on his conversation with "the man," he believed he did not owe any money. AR p. 251.

Plaintiff later received a "Notice of Change in Benefits" letter dated June

20, 1994 (the "June 1994 Letter"). In that correspondence, the Administration advised that it was writing to tell Plaintiff "how we paid you $.00 too much in benefits" and what he could do if he thought the Administration was wrong about the overpayment. AR p. 26.

Plaintiff did not respond to the June 1994 Letter. He put the June 1994 Letter "in the bottom of [his] toolbox" and "just didn't pay [the Administration] no attention." AR p. 251.

In subsequent correspondence dated September 1994 (the "September 1994 Letter"), the Administration notified Plaintiff that he was no longer considered disabled as of that month. AR p. 120; see also AR p. 123. The September 1994 Letter also told Plaintiff that the Administration would "write you later if we owe you any back payments or you are overpaid." AR p. 120.

Thereafter, the Administration deducted certain amounts from Plaintiff's income tax refunds. Specifically, according to an internal Administration fact sheet, an overpayment amount of $16,626.00 was certified to the Internal Revenue Service on December 21, 1995, and the following amounts were deducted from Plaintiff's federal tax refunds:

| Tax Year | Amount of Offset |
|----------|------------------|
| 1996 | $357.00 |
| 2000 | $435.00 |
| 2001 | $350.00 and $300.00 |

|      |          |
|------|----------|
| 2002 | $87.00   |
| 2003 | $406.00  |
| 2004 | $822.00  |
| 2013 | $3,609.00 |

AR pp. 139 & 141.

Administration records reference communications with Plaintiff during this time period, including that Plaintiff called the Administration in 2002 to assert that he did not owe any overpayment and subsequent calls by him in 2003 and 2004 to state that he wanted amounts to continue to be withheld from his tax refunds and for the "TOPs [treasury offset program] offset to continue." AR p. 143.[2]

Following these offsets, the Administration sent billing statements to Plaintiff reflecting the adjusted overpayment balance. See AR pp. 145-179.

## B. Later Correspondence and Plaintiff's Requests for Review

By letter dated June 19, 2013 (the "June 2013 Letter"), the Administration advised Plaintiff that he had been overpaid by $10,233.00.[3] AR

---

2 During the February 17, 2017 hearing, Plaintiff testified that he did not recall these communications, but that if he did request continued withholding from his tax refunds, he did so "just to keep them from harassing me anymore because, I mean, I don't think I owe it because that I worked for so long. And I just don't – you know, keeping them off my back, if they want a couple hundred dollars." AR p. 253.

3 The Administration contends that after application of the tax refund offsets, and a $27.00 adjustment, Plaintiff's overpayment balance was reduced to $10,233.00. In his

pp. 95-97.

Approximately 11 months later, in correspondence dated May 19, 2014 (the "May 2014 Letter"), the Administration again advised Plaintiff that he had been overpaid by $10,233.00. AR pp. 187-190. The May 2014 Letter listed monthly payments made to Plaintiff through January 1994, the amounts Plaintiff should have been paid, and the amounts of the tax refund offsets. AR p. 187. It also advised Plaintiff that he had "certain rights with respect to this overpayment;" specifically, the right to appeal the overpayment determination within 60 days and the right to request a waiver of the need to repay the overpayment. AR p. 188.

On June 16, 2014, the Administration received a request from Plaintiff for reconsideration and a separate request from him for a waiver of overpayment recovery. AR pp. 86; 87-94.

On November 11, 2014, the Administration responded as follows:

> We are dismissing your request for reconsideration. Your overpayment is due to work and earnings for the years 1992 through 1994. Your reconsideration rights for work and earnings have expired. You have also asked us to waive your overpayment. The record shows that a personal conference with you regarding the waiver decision is pending.

---

briefing, the Commissioner states that the $27.00 adjustment reflects a correction that Plaintiff was paid $679.00 rather than $706.00 in January 1992. Doc. 15, p. 16 n. 8.

AR p. 194.[4]

Plaintiff attended a personal conference regarding his waiver request in January 2015.  See AR pp. 100-101.

On January 20, 2015 (the "January 2015 Letter"), the Administration wrote to Plaintiff "about your request that we reconsider and waive the collection of your Social Security overpayment."  AR p. 199.  The correspondence went on to state that "[b]ased on the facts we have, our decision that you are overpaid is correct and we cannot waive the collection of your overpayment...."  AR p. 199.  The January 2015 Letter, however, stated that the amount of overpayment was $12,195.38.  AR p. 199.

On March 16, 2015, Plaintiff requested a hearing before an ALJ based on "inadequate consideration of the evidence."  AR p. 102.  A hearing was held on February 17, 2017 at which Plaintiff, represented by counsel, testified.  AR pp. 242-268.

On August 24, 2017, the ALJ issued an unfavorable decision.  AR pp. 10-18.  The ALJ found that Plaintiff was overpaid benefits amounting to $16,269.00[5] and that an outstanding balance of $10,233.00 remained.  AR p. 14.  The ALJ further found that Plaintiff was "at fault" in causing the

---

4 The November 11, 2014 letter did not set out any additional steps Plaintiff could take for further review of his request for reconsideration.  AR pp. 194-195.

5 This sum represented an original overpayment assessment of $16,626.00 less the 1996 tax refund offset of $ $357.00.  AR p. 139.

overpayment and therefore denied Plaintiff's request that the $10,233.00 outstanding balance be waived.  AR pp. 16-17.

Plaintiff requested review by the Appeals Council on September 20, 2017; his request was denied on August 23, 2018.   AR pp. 240; 4-6. Accordingly, the ALJ's August 24, 2017 decision is the final administrative decision.

On October 22, 2018, Plaintiff filed the instant action.  Doc. 1.

## II. Standard of Review

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner is limited to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applies the proper legal standards. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006) (quoting Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal quotation marks omitted).   It is more than a scintilla but less than a preponderance of evidence.  Id.

When a federal district court reviews the Commissioner's decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]."  Id.

## III.    Analysis

### A. Plaintiff's Allegation of Error

Plaintiff concedes that he "owes the defendant some money for an overpayment" but argues that substantial evidence does not support the ALJ's finding that the balance due at the time of the ALJ's decision was $10,233.00. Doc. 11, pp. 7 & 4.[6]  In response, the Commissioner argues that Plaintiff failed to exhaust his administrative remedies with respect to the amount of the alleged overpayment, and that in any event substantial evidence supports the ALJ's findings regarding the amount of overpayment.

### B. Administrative Exhaustion

42 U.S.C. § 405(g) provides, in part, that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party…may obtain a review of such decision by a civil action" in the United States District Court for the judicial district in which the plaintiff resides.  "In order to obtain a judicially reviewable 'final decision,' the Plaintiff must complete an administrative review process within a specific time." Whary v. Colvin, No. 1:12CV1261, 2013 WL 1622003, at * 2 (M.D.N.C. April 15, 2013) (citing  20 C.F.R. § 404.900(a)(1)-(4); Matthews v. Eldridge, 424 U.S. 319, 327, 96 S.Ct. 893, 899, 47 L.Ed.2d 18 (1976) ("The only avenue for judicial

_____

6 Plaintiff does not challenge the ALJ's denial of Plaintiff's request for a waiver.

review is [42 U.S.C. § 405(g)], which requires exhaustion of the administrative remedies provided under the [Social Security] Act as a jurisdictional prerequisite.")). "Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review." Weinberger v. Salfi, 422 U.S. 749, 765, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975).

Under the regulations, the administrative process has four steps which must be taken in order: (1) initial determination; (2) reconsideration; (3) a hearing before an ALJ; and (4) review by the Appeals Council. 20 C.F.R. § 404.900(a)(1)-(4). "Proceeding through these stages exhausts the claimant's administrative remedies. Only upon completion of these steps may the claimant then seek judicial review by filing an action in a federal district court." Kelley v. Social Security Admin., No. 4:11-cv-76, 2011 WL 6934565, at * 2 (E.D.N.C. Nov. 29, 2011). "Throughout the administrative review process, the onus is on the claimant to request the next administrative step." Id.

If the Administration determines that an overpayment has occurred, it must send written notice to the individual it believes was overpaid. 20 C.F.R. § 404.502a. The notice must include both an explanation of the individual's right to request a waiver of the Administration's recovery of the overpaid

amount and the individual's right to request reconsideration of the fact and/or

amount of the overpayment determination. 20 C.F.R. § 404.502a(e) & (f).

A reconsideration request must be made within sixty days of the initial determination of overpayment, but the time may be extended for good cause if, for instance, the individual never received notice of the initial overpayment decision. If the allegedly overpaid individual requests reconsideration, the SSA is to review the case and issue written notice of its decision. If the individual does not agree with the reconsideration decision, he or she can request a hearing before an administrative law judge. After the hearing, the administrative law judge will issue a decision on the issue, which can be appealed to the SSA's Appeals Council. The Appeals Council can decide to review the case or deny the request for review. Once the Appeals Council has denied the request for review or reviewed the case and issued a decision, the allegedly overpaid individual can file an action in a federal district court within sixty days of the decision.

Instead of or in addition to reconsideration, an allegedly overpaid individual can ask the SSA to waive the overpayment. An individual's overpayment can be waived if the individual shows that he or she is without fault in causing the overpayment and that "adjustment or recovery would either defeat the purpose of title II of the Act or be against equity and good conscience." If waiver of the overpayment is requested, the SSA must decide if a waiver may be approved. If waiver cannot be approved simply on review of the information and documentation provided to the SSA, the individual is then notified that a file review and a personal conference will take place. During the personal conference, the individual and their representative can review the "claims file and applicable law and regulations with the decisionmaker ..." After the personal conference, the SSA is to issue

a written decision that specifies the "findings of fact and conclusions in support of the decision to approve or deny waiver" and advises the individual of the right to appeal the decision. If the individual does not appear for the conference, the SSA will make a decision on the waiver request based on the written evidence. If the waiver request is denied without a conference, the individual can request reconsideration of the decision. Both the denial of the waiver request after a personal conference and the decision on reconsideration can be appealed to an administrative law judge. After that, the appeals process is the same process (administrative law judge, Appeals Council, federal court) described above.

Grice v. Colvin, 97 F.Supp.3d 684, 690-691 (D. Md. 2015) (internal citations omitted).

Here, the Commissioner accepts that Plaintiff exhausted his administrative remedies as to his request for a waiver but argues that Plaintiff failed to exhaust his administrative remedies with respect to the amount of the overpayment and therefore that this Court "should decline to address the merits of Plaintiff's challenge to the overpayment." Doc. 15, p. 9. (citing Sipp v. Astrue, 641 F.3d 975, 980 (8th Cir. 2011)).

The administrative record does not contain documentation indicating that Plaintiff sought reconsideration or waiver of the initial overpayment notifications he received, and Plaintiff testified that the only thing he did following receipt of that information was to call a "man" in Alabama. AR p. 250. Plaintiff, though, did request review following his receipt of the May 2014 Letter, which identified an overpayment amount of $10,233.00 (i.e., $16,626.00

less the tax refund offsets and $27.00 adjustment). AR pp. 187-190.

Significantly, in the May 2014 Letter, the Administration advised Plaintiff of his right to seek reconsideration of the fact and amount of the overpayment determination as well as to request a waiver. AR p. 188.

In June 2014, Plaintiff timely submitted a Request for Reconsideration and a separate Request for Waiver of Overpayment Recovery. AR pp. 86; 87-94.

By letter dated November 11, 2014, and notwithstanding the appeal rights referenced in the May 2014 Letter, the Administration informed Plaintiff that his reconsideration request was too late. AR p. 194 ("Your overpayment is due to work and earnings for the years 1992 through 1994. Your reconsideration rights for work and earnings have expired.").

However, a January 2015 Letter, which Plaintiff received following his personal conference, seemed to pertain to both Plaintiff's reconsideration request and his request for waiver. See AR p. 199 ("We are writing about your request that we reconsider and waive the collection of your Social Security overpayment.").

On March 16, 2015, Plaintiff requested a hearing before an ALJ. AR p. 102. While the ALJ stated in her August 24, 2017 decision that "[t]he issue" was "whether the claimant qualifies for waiver of the overpayment," AR p. 13, the ALJ also found that the outstanding balance remaining as of the date of

her decision was $10,233.00. AR pp. 14-15. This finding necessarily implicated the overpayment issue, not just Plaintiff's request for a waiver.

Plaintiff requested review by the Appeals Council within 60 days of the ALJ's decision, AR pp. 239 & 10, and filed the instant action within 60 days of the Appeals Council's denial of Plaintiff's request. AR pp. 4-6; Doc. 1.

In sum, while Plaintiff did not object when he was initially advised that an overpayment had been made, Plaintiff did proceed, following the May 2014 Letter, through the necessary administrative steps to seek reconsideration of the amount of overpayment. Because the balance of $10,233.00 was calculated from and is based on $16,626.00, which the Administration apparently determined to be the original overpayment amount, Plaintiff properly exhausted his administrative remedies as to the total amount of the overpayment.

Accordingly, the Court finds that, under these circumstances, Plaintiff timely proceeded through the four-step administrative review process, and that the Court may properly consider Plaintiff's challenge to the ALJ's determination regarding the amount of the overpayment.

### C. Amount of Overpayment

The Social Security Act does not set forth which party, as between the Plaintiff and the Commissioner, bears the burden of proving the amount of an alleged overpayment in a social security appeal. Although the Fourth Circuit

has not yet spoken on this issue, other circuits have placed the burden of proving the amount of the overpayment on the Commissioner. See McCarthy v. Apfel, 221 F.3d 1119, 1124 (9th Cir. 2000) ("Although the Social Security Act does not designate which party bears the burden of establishing the fact and amount of overpayments, each circuit to consider the issue has held that the Commissioner has this burden. We join these circuits and hold that the Commissioner bears the burden of proving the fact and amount of overpayment.") (citing Cannuni ex rel. Cannuni v. Schweiker, 740 F.2d 260, 263 (3d Cir.1984); United States v. Smith, 482 F.2d 1120, 1124 (8th Cir.1973)).

Courts have held that the Commissioner fails to meet its burden when it relies on an "unsubstantiated belief that particular payments were made…." McCarthy, 221 F.3d at 1126; see also Perrault v. Colvin, No. 14-13717, 2016 WL 1411339, at * 3 (D. Mass. April 4, 2018) (vacating Commissioner's determination as to the amount of overpayment where there was no evidence of what payments plaintiff actually received from the Administration); Daviau v. Astrue, No. 09-cv-0870, 2012 WL 13543, at * 7 (N.D.N.Y. Jan. 4, 2012) (remanding for recalculation of the overpayment amount where the ALJ did not refer to any portion of the record to support the amount of overpayment, and there were "inconsistencies in the record regarding the amount of overpayment" such that the court could not determine whether the ALJ's determination was supported by substantial evidence).

In McCarthy, the Ninth Circuit found that the Commissioner failed to present reliable evidence of overpayment where the only document that identified the specific payments at issue was the initial overpayment determination letter. 221 F.3d at 1125-1126. The McCarthy court explained:

> The letter, standing alone, does not constitute substantial evidence of the amount of the overpayments. The district court erred in relying exclusively on this letter in rejecting McCarthy's challenge to the amount of overpayments.

> Although canceled checks may be the best evidence of the amount of overpayment, see Chitwood v. Chater, 928 F. Supp. 874, 882 (E.D.Mo.1996), they are not the only evidence sufficient to satisfy the Commissioner's burden. The Commissioner could, for instance, subpoena a claimant's bank records to show the deposit of checks matching the claimed payments. Or the Commissioner might rely upon the claimant's own prior admissions that he received payments in the claimed amounts.

> Id. at 1126.

In contrast, where additional evidence supports the Administration's determination regarding the amount of overpayment, courts have found that the Commissioner sustained its burden. See Romero v. Colvin, No. 13-cv-2471, 2014 WL 573649, at * 3 (N.D. Cal. Dec. 12, 2014) (Commissioner sufficiently established amount of overpayment based on internal Administration record showing history of payments and containing "Plaintiff's name, social security number and address, as well as bank account information, showing Plaintiff as payee and direct deposit of payments…."); Wilkening v. Barnhart, No. 02-

CV-9096, 2004 WL 1005718 at *6 (N.D. Ill. April 27, 2004), aff'd, 139 Fed. Appx. 715 (7th Cir. 2005) (Commissioner sustained her burden of proof based upon a waiver determination, a "Master Beneficiary Record" showing an overpayment of $29,280.10, and Plaintiff's admission to owing that amount during a hearing before an ALJ.).

To support the Administration's position regarding the amount of overpayment in this case, the Commissioner relies on letters addressed to Plaintiff that listed the purported overpayments and tax refund offsets. See Doc. 15, pp. 14-17 (citing AR pp. 26-28 (June 1994 Letter), pp. 95-97 (June 2013 Letter), pp. 187-190 (May 2014 Letter)). The Commissioner argues that these letters are consistent with each other as well as with the overpayment balance as shown on an internal Administration fact sheet. See AR pp. 139-141 (internal fact sheet).

The Court, however, finds that these internal records are insufficient to sustain the Commissioner's burden of proving the amount of the alleged overpayment considering the numerous ambiguities and gaps that exist in the record. First, the evidence is conflicting regarding the amount the Administration originally assessed as being the total overpayment. Plaintiff testified that prior to receiving the June 1994 Letter he was notified that he owed various amounts ($17,000; $3,000; and $9,000). The June 1994 Letter (which is the earliest correspondence in the administrative record regarding

the amount of overpayment) stated that Plaintiff had been overpaid "$.00 too much in benefits" and told him that if he could not "refund the full $.00 now," he could submit a partial payment along with an explanation of his financial circumstances and a definite plan for repaying "the balance." AR pp. 26-27.[7]

Subsequent communications created additional ambiguity regarding the original amount of the assessed overpayment. In the September 1994 Letter, the Administration stated that it would write Plaintiff later "if…you are overpaid." AR p. 120. However, additional correspondence did not come until June 2013, though the Administration apparently continued to collect amounts from Plaintiff by deducting sums from his tax refunds.[8]

Second, other portions of the record are incomplete. The administrative record includes some billing statements that were sent to Plaintiff following

---

[7] Besides failing to state a specific amount of the overpayment, the June 1994 Letter did not provide information from which that amount could be calculated easily. The first page of the June 1994 Letter included two lists – one captioned "you were paid" that referenced amounts paid per month between February 1992 and January 1994 and another captioned "you (sic) wer payable" that referenced "$0.00 2/92 through 01/94." AR p. 26. Presumably, the second list was intended to show the amounts Plaintiff should have received, as opposed to the amounts he actually received as stated in the first list. These lists suggested that Plaintiff received a payment for February 1992 to which he was not entitled. However, a paragraph just above the lists stated that "the last disability check to which you are entitled is for the month of February 1992."

[8] It is not clear that Plaintiff was ever told directly by the Administration that $16,626.00 had been calculated as the original overpayment amount.

tax refund offsets, but others are missing. AR pp. 145-179.[9] Nor does the record include any documentation, other than the Administration's own internal records, reflecting the actual tax refund offsets (such as communications from the IRS).

Third, confusion regarding the handling of the assessed overpayment is evident from other documents. Notwithstanding that the May 2014 Letter had advised Plaintiff that his overpayment balance was $10,233.00, later information sent to Plaintiff referenced a total overpayment of $12,195.38.[10] See e.g., AR pp. 202-205 & 206-209.

There appears to be no dispute that Plaintiff owes some amount to the Administration for an overpayment.[11] See Doc. 11, p. 7. However, the information the Commissioner has provided in the current record, considering the inconsistency, ambiguity, and incompleteness of those materials, is not sufficient to establish the original amount of the overpayment as well as the current amount due. See Darren W.W. v. Commissioner of Social Security, No.

---

9 The first billing statement contained in the record is dated September 3, 2002. AR p. 145. The Administration's internal fact sheet, however, indicates that four earlier tax refund offsets occurred. The record does not include any billing statements reflecting a reduction in the amount owed following these earlier tax refund offsets.

10 The report from the personal conference shows this total was reached by an Administration officer adding $1,962.38 to $10,233.00. See AR p. 100. Although subsequent billing notices indicate that the Administration corrected this error, the basis for how it occurred is not clear. See AR pp. 214-217, 210-213.

11 As previously noted, the Administration's records reference telephone calls during which Plaintiff asked that the tax refund offsets continue. AR p. 143.

3:16-cv-5946, 2018 WL 6303676, at *5 (W.D. Wash. Dec. 3, 2018) ("the record contains several gaps and ambiguities with respect to the overpayment calculations. As such, the Court finds the appropriate remedy is to remand this matter for the Commissioner to review and complete new calculations as necessary on the overpayment."). Consequently, the Court is unable to conclude that the ALJ's ruling regarding the amount of overpayment due by Plaintiff is supported by substantial evidence and finds that the case should be remanded for additional review and calculations by the Commissioner.[12]

---

[12] It may be that on remand a sufficient showing can be made by reference to additional internal Administration data, external documents, or some combination thereof. See e.g., AR p. 256 (argument by Plaintiff that proof of the amount of overpayment could be "copies of cancelled checks" though recognizing such proof was not "realistic in this case"); Doc. 11, p. 8 ("No person of authority within the SSA has either testified or even signed an affidavit to justify the alleged overpayment of $10,233.00."). The undersigned expresses no opinion in this regard.

**IT IS THEREFORE ORDERED THAT:**

1. Plaintiff's Motion for Summary Judgment (Doc. 10) is **GRANTED** and the Commissioner's Motion for Summary Judgment (Doc. 14) is **DENIED**.

2. The Commissioner's final decision (the ALJ's August 24, 2017 decision) is **VACATED** and this matter is **REMANDED** to the Commissioner for further proceedings.

Signed: March 9, 2020

W. Carleton Metcalf
United States Magistrate Judge